1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10

11   FERNANDO D. LOPEZ,                    Case No.:  16cv0811 AJB (DHB)

12                            Plaintiff,   **GRANTING DEFENDANTS WELLS
                                           FARGO, US BANK, AND FIRST**
13   v.                                    **AMERICAN'S MOTIONS TO
                                           DISMISS PLAINTIFF'S FIRST**
14   WELLS FARGO BANK, N.A.; WELLS         **AMENDED COMPLAINT FOR**
     FARGO HOME MORTGAGE; FIRST            **FAILURE TO STATE A CLAIM.**
15   AMERICAN TITLE INSURANCE CO.;         **(DOC NOS. 21, 23)**
     US BANK NATIONAL ASSOCIATION,
16   ET AL.,

17                            Defendants.

18
19
20
21

22          Presently before the Court are Defendants' WELLS FARGO BANK, N.A. (also

23   sued as Wells Fargo Home Mortgage) ("Wells Fargo"), and US BANK NATIONAL

24   ASSOCIATION ("US Bank") (collectively "Defendants"), motion to dismiss Fernando

25   Lopez's ("Plaintiff") first amended complaint ("FAC"). (Doc. No. 23.) Also pending is

26   Defendant FIRST AMERICAN TITLE INSURANCE COMPANY's ("First American")

27   motion to dismiss the FAC. (Doc. No. 21.) After review of the parties' motions and

28   oppositions, the Court finds these motions suitable for determination on the papers and

                                           1

without oral argument in accordance with Civil Local Rule 7.1.d.1. For the reasons set forth more fully below, the Court **GRANTS** both First American's and Defendants' motions to dismiss Plaintiff's FAC.

I.   **BACKGROUND**

A.   **GENERAL ALLEGATIONS**

The following facts are taken from the FAC and construed as true for the limited purpose of resolving the pending motions. *See Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). In 2003, Plaintiff purchased real property located at 947 Merced River Road, Chula Vista, California 91913 ("the Property"). (Doc. No. 20 ¶ 9.) In 2004, Plaintiff executed a loan ("the Loan") with Wells Fargo in the principal amount of $600,000 at an initial interest rate of 4.625 percent. (*Id.*) The Loan was secured by a Deed of Trust in favor of Wells Fargo, encumbering the Property ("Deed of Trust"). (*Id.* ¶ 10.) Wells Fargo allegedly originated the Loan without verifying that Plaintiff could afford the terms and prepared his income tax return[1] as part of the underwriting process. (*Id.* ¶ 17.) The loans interest only payments exceeded $2,300.00 and accounted for nearly all of Plaintiff's entire net monthly income. (*Id.* ¶ 18.) However, Plaintiff agreed to the Loan terms relying on Wells Fargo's assurances that he could refinance the Loan at a later time with more favorable terms. (*Id.*)

On June 16, 2015, Wells Fargo placed the Loan into a "Pooling and Servicing Agreement" and converted it into stock as Wells Fargo Mortgage-Backed Securities (referred to as "The Trust").[2] (*Id.* ¶ 11.) Instead of one party holding the interest in the Loan, the Pooling and Service Agreement placed the Loan into a pool with other loans where multiple investors could purchase shares of the income streams generated from the Trust. (*Id.* ¶ 76.) Changing the character of the Loan allegedly had a negative effect on the

---

[1] Plaintiff does not allege in the FAC whether Wells Fargo prepared his tax return with or without his consent or approval.

[2] Plaintiff alleges that the assignment of the Deed of Trust was ineffective because it was made after the "closing date." (Doc. No. 20 ¶ 12.)

value of the Property, which was known by Defendants but was not disclosed to Plaintiff. (*Id.*)

After falling upon hard financial times in 2009, Plaintiff requested a loan modification from Wells Fargo. (*Id.* ¶¶ 19-20.) Wells Fargo advised Plaintiff to stop making timely loan payments. (*Id.* ¶ 20.) Plaintiff complied and as a result, he defaulted on the Loan and on November 17, 2009, a Notice of Default was recorded against the Property. (*Id.* ¶¶ 20, 23.) In 2010, Plaintiff filed a Chapter 13 Bankruptcy Petition. (*Id.* ¶ 20.)

On December 22, 2009, Defendant First American was recorded as the substitution trustee under the Deed of Trust. (*Id.* ¶ 24.) Plaintiff states that this deed of trust was not signed by Wells Fargo, but was signed by Chet Sconyers who is the Vice President at First American Trustee Servicing Solutions/Nationwide Posting and Publication. (*Id.*) Plaintiff further contends that Mr. Sconyers is allegedly involved in the robo-signing of loan and mortgage documents. (*Id.*) On January 6, 2010, the beneficial interest of the Deed of Trust was transferred by assignment to US Bank. (*Id.* ¶ 25.) On April 10, 2012, First American requested that a corrective assignment for the Deed of Trust be recorded to correct a ministerial mistake. (*Id.* ¶ 26.) On June 5, 2012, a Notice of Trustee Sale was recorded. (*Id.* ¶ 27.) On April 3, 2013, a Notice of Default and election to sell under the Deed of Trust was recorded. (*Id.* ¶ 28.) On July 1, 2013, First American recorded a Notice of Trustee Sale. (*Id.*) Plaintiff claims that the authorized signer signature on this document is illegible. (*Id.*) On September 16, 2014, Plaintiff sent a Notice of Validation of Alleged Debt to First American. (*Id.* ¶ 29.) On June 11, 2015, Plaintiff filed another Chapter 13 petition. (*Id.* ¶ 33.) As of the date of this filing, the Property has not yet been sold. (*See generally*, *id.*)

**B.   PROCEDURAL BACKGROUND**

On April 5, 2016, Plaintiff filed a complaint against Defendants and First American asserting several claims for relief. (Doc. No. 1.) On April 26, 2016, Defendants filed a motion to dismiss for failure to state a claim. (Doc. No. 8.) On May 23, 2016, First American filed a motion to dismiss for failure to state a claim and for lack of subject matter

jurisdiction. (Doc. No. 12.) On June 17, 2016, the Court issued an Order to Show Cause requiring Plaintiff to file a brief establishing subject matter jurisdiction. (Doc. No. 16.) On June 29, 2016, Plaintiff responded to the order (Doc. No. 18) and on July 1, 2016, the Court dismissed the complaint for lack of subject matter jurisdiction. (Doc. No. 19.) Plaintiff was given thirty days to amend the complaint. (*Id.*) On July 28, 2016, Plaintiff filed his FAC. (Doc. No. 20.)

Plaintiff alleges the following causes of action against Defendants and First American: (1) violation of the Truth in Lending Act ("TILA"); (2) violation of the Fair Housing Act ("FHA") and the Equal Credit Opportunity Act ("ECOA"); (3) lack of standing to foreclose; (4) fraud in concealment and in inducement; (5) violation of the Rosenthal Fair Debt Collection Practices Act ("the Rosenthal Act"); (6) violation of the Real Estate Settlement Procedures Act ("RESPA"); (7) intentional infliction of emotional distress ("IIED"); (8) slander of title; (9) unlawful and fraudulent business practices; (10) violation of the Homeowners Bill of Rights ("HBOR"); (11) quiet title; and (12) declaratory relief. (Doc. No. 20 at 1.)[3]

On August 10 and 16, 2016, Defendants and First American moved to dismiss Plaintiff's FAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. No. 21; Doc. No. 23.)

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.,* 88 F.3d 780, 783 (9th Cir. 1996)

---

[3] Page numbers are in reference to the automatically generated CM/ECF page numbers and not the original document numbers.

1   (internal citation omitted). However, a complaint will survive a motion to dismiss if it

2   contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

3   *v. Twombly,* 550 U.S. 544, 570 (2007). In making this determination, a court reviews the

4   contents of the complaint, accepting all factual allegations as true, and drawing all

5   reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l*

6   *League of Postmasters of U.S.,* 497 F.3d 972, 975 (9th Cir. 2007).

7        Notwithstanding this deference, the reviewing court need not accept "legal

8   conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a

9   court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated*

10   *Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526

11   (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume

12   their veracity and then determine whether they plausibly give rise to an entitlement to

13   relief." *Iqbal,* 556 U.S. at 679.

14   **III.   DISCUSSION**

15        Plaintiff makes several claims against Defendants and First American in his FAC.

16   Plaintiff alleges that Wells Fargo targeted him for a "predatory home mortgage" with terms

17   that ensured default. (Doc. No. 20 at 3.) In addition, Plaintiff contends that he was "forced

18   into bankruptcy" after relying on Wells Fargo's advice to stop making timely payments on

19   the Loan. (*Id.*) Plaintiff further alleges that Wells Fargo unlawfully assigned its ownership

20   and security interest in the Property and thus Defendants First American and US Bank, the

21   foreclosing entities, foreclosed on the Property without authority to do so. (*Id.* at 2.) As a

22   result, Plaintiff claims that he and his wife lost all equity in their home and have suffered

23   severe emotional distress from the resulting stress of facing threats of foreclosure. (*Id.* at

24   3.) Plaintiff seeks declaratory judgment, injunctive and equitable relief, quiet title, and

25   special, general, and punitive damages. (*Id.* at 29-31.)

26        **A.   JUDICIAL NOTICE**

27        The Court first turns to Defendants' and First American's request for judicial notice

28   pursuant to Federal Rule of Evidence 201. Defendants and First American request the

Court take judicial notice of several documents of public record including a grant deed, deed of trust, assignment of deed of trust, several notices of default and election to sell, notice of trustee's sale, and copies of U.S. Bankruptcy court case files. (Doc. No. 21-2; Doc. No. 23-4.)

While, "as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion . . . it may take judicial notice of matters of public record and consider them without converting a Rule 12 motion into one for summary judgment." *U.S. v. 14.02 Acres of Land*, 547 F.3d 943, 955 (9th Cir. 2008) (quotation and citations omitted). Judicial notice is appropriate when a fact is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Each of the documents Defendants and First American request judicial notice of are official public records recorded by San Diego County. (*See generally,* Doc. No. 21-2; Doc. No. 23-4.) Plaintiff does not challenge the authenticity of the documents, and as public records, judicial notice is appropriate. Accordingly, the requests for judicial notice are **GRANTED.**

## B.    TRUTH IN LENDING ACT

The Court now turns to Plaintiff's main causes of action. Defendants argue that Plaintiff's TILA claim fails because it is untimely. (Doc. No. 23-1 at 3.) First American argues that it is only acting as the trustee of a deed of trust and thus under California and federal law TILA does not apply to it. (Doc. No. 21-1 at 10.)  Plaintiff contends that Wells Fargo violated provisions of TILA by originating the Loan "without regard to Plaintiff's ability to repay the debt, and/or verifying and documenting Plaintiff's ability to repay the debt in violation of 15 U.S.C. § 1639(h)." (Doc. No. 20 ¶ 41.) Plaintiff further contends that Wells Fargo violated TILA and Regulation Z by failing to provide him "with disclosures required under section 129 of TILA (15 U.S.C. § 1639(a))." (*Id.* ¶ 43.)

As an initial matter, the Court notes that Plaintiff has failed to allege that Defendants First American and US Bank violated any TILA provisions. (Doc. No. 20 ¶¶ 39-43.) Thus,

the Court will assume Plaintiff's TILA claim is only against Wells Fargo. Section 1640(e) of TILA states that any action "under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought . . . before the end of the 3-year period beginning on the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The Loan in question was originated in 2004. (Doc. No. 20 ¶ 9.) Plaintiff filed the instant action on April, 5, 2016. (Doc. No. 1.) Thus, Plaintiff's TILA claim is nine years untimely and is **DISMISSED WITH PREJUDICE.**

### C.     FAIR HOUSING ACT AND EQUAL CREDIT OPPORTUNITY ACT

Defendants and First American argue that Plaintiff's FHA and ECOA claims fail because they are also untimely. (Doc. No. 23-1 at 4; Doc. No. 21-1 at 11.) Plaintiff contends that Defendants and First American violated provisions of both the FHA and the ECOA by subjecting him to a "discriminatory equity-stripping stated income refinance loan program," on the basis of his "race, color, and national origin" as a Filipino. (Doc. No. 20 ¶¶ 47, 53, 60, 62-64.)

Section 3613 of the FHA states "An aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." *See* 42 U.S.C. § 3613(a)(1)(A). ECOA section 1691e states "No such action [under this section] shall be brought later than 5 years after the date of the occurrence of the violation." *See* 15 U.S.C. § 1691e(f).

If Defendants and First American engaged in discriminatory housing practices at the Loan's origination in 2004, Plaintiff's FHA and ECOA claims were time-barred in 2006 and 2009 respectively. Thus, Plaintiff's claims under the FHA and ECOA are untimely and are **DISMISSED WITH PREJUDICE.**

### D.     LACK OF STANDING

Next, Defendants and First American argue that Plaintiff lacks standing to challenge the foreclosure sale. (Doc. No. 23-1 at 4; Doc. No. 21-1 at 12.) In addition, Defendants and First American also contend that Plaintiff has failed to provide facts to support his allegation that they do not have standing to foreclose on the Property. (Doc. No. 23-1 at 4-

7

5; Doc. No. 21-1 at 12.) In opposition, Plaintiff claims that Defendants and First American do not have standing to foreclose on the Property or to enforce the Deed of Trust because they do not have a valid security interest in the Property. (Doc. No. 20 ¶ 70.)  According to Plaintiff, the only individuals who have standing to foreclose on the Property are the certificate holders of the securitized trust "because they are the end users and pay taxes." (*Id.* ¶ 71.) Additionally, Plaintiff asserts that he has standing to challenge the foreclosure because he claims that the 2010 assignment of the Deed of Trust is void and California law provides that borrowers have standing to challenge a defective assignment. (Doc. No. 25 at 4.)

The Court first turns to Plaintiff's assertion that Defendants and First American do not have a valid interest in the Property and thus did not have the right to foreclose on it. (Doc. No. 20 ¶ 70.) After analysis of the FAC, the Court finds that Plaintiff has failed to plead sufficient facts for this claim. A wrongful foreclosure plaintiff "must do more than assert a lack of authority to foreclose; [he] must allege facts 'show[ing] the defendant who invoked the power of sale was not the true beneficiary.'" *Yvanova v. New Century Mortg. Corp.,* 62 Cal. 4th 919, 930 (2016) (citation omitted). Here, Plaintiff has not provided a specific factual basis for alleging that foreclosure was not initiated by the correct party. Instead, Plaintiff claims that Defendants and First American have "failed to perfect any security interest in the Property," cannot prove that they have a valid interest in the Property, and that they did not "properly comply with the terms of [their] own securitization requirements and . . . fraudulently prepared documents." (Doc. No. 20 ¶¶ 70, 72.)  These conclusory statements fail to show that Defendants or First American were not the true beneficiaries nor do they clarify what entity now holds an interest in the Loan or Deed of Trust. Furthermore, the documents that have been granted judicial notice by the Court provide evidence contrary to Plaintiff's assertions.

Next, the Court finds that Plaintiff has not established that the 2010 assignment of the Deed of Trust is void. In California, a third party can challenge an assignment only

when the asserted defect would void[4] the assignment, not when the assignment is merely voidable at the election of the assignor. *Glaski v. Bank of Am., Nat'l Ass'n,* 218 Cal. App. 4th 1079, 1094 (2013). Thus, Plaintiff might have standing to challenge the 2010 assignment of the Deed of Trust if the asserted defect would void the assignment. However, Plaintiff does not allege how the assignment was defective other than broadly claiming that Defendants and First American did not comply with their own securitization requirements. (Doc. No. 20 ¶ 72.) Because Plaintiff is challenging the assignment, he has the burden to prove (and, of course, first plead) that it was wrongful. *Yhudai,* 1 Cal. App. 5th at 1260. After analyzing Plaintiff's complaint, the Court finds that Plaintiff has not met this burden. *Glaski,* 218 Cal. App. 4th at 1094.

Finally, in regards to Plaintiff's standing to challenge the impending foreclosure sale, California law does not permit the use of a lawsuit to delay or prevent a foreclosure sale that has not yet occurred. *Jenkins v. JP Morgan Chase Bank, N.A.,* 216 Cal. App. 4th 497, 512 (2013) (citations omitted). As Plaintiff has not alleged facts indicating that the Property has been sold, Plaintiff does not have standing to challenge the impending foreclosure sale. Therefore, as Plaintiff has failed to state a claim that is plausible on its face, his claim that Defendants and First American lack standing is **DISMISSED.**

### E.   FRAUD

Defendants and First American next highlight that Plaintiff's fraud claims are not pled with the requisite specificity under California and federal law and thus must fail. (Doc. No. 23-1 at 6-8; Doc. No. 21-1 at 13.) Plaintiff alleges fraud in concealment and fraud in inducement. (Doc. No. 20 ¶¶ 76, 86.)

---

[4] The California Supreme Court held that "If a purported assignment necessary to the chain by which the foreclosing entity claims that power is absolutely void, meaning of no legal force or effect whatsoever, the foreclosing entity has acted without legal authority by pursuing a trustee's sale, and such an unauthorized sale constitutes a wrongful foreclosure." *Yhudai v. Impac Funding Corp.,* 1 Cal. App. 5th 1252, 1256 (2016), review denied (Oct. 26, 2016) (citations omitted).

Under California law, fraud must be specifically pleaded, meaning that "every element of the cause of action for fraud must be alleged in full, factually and specifically."[5] *Wilhelm v. Pray, Price, Williams & Russell,* 186 Cal. App. 3d 1324, 1331 (1986). "[A] fraud action against a corporation requires the plaintiff to allege the name of the persons who made the alleged fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal. App. 4th 153, 157 (1991) (citations omitted). Federal law also requires a plaintiff to allege the circumstances "constitut[ing] the alleged fraud" or "be specific enough to give the defendant's notice of the particular misconduct" including "the who, what, when, where, and how of the fraud." *See* Fed. R. Civ. P. 9(b); *see also Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (citations omitted).

In *Tarmann v. State Farm Mutual Auto Insurance Company*, plaintiff alleged that defendants were "authorized agents of State Farm" and were "adjustors and/or claims supervisors." *Tarmann*, 2 Cal. App. 4th at 157–158. The court in *Tarmann* held that defendants had no reason to know who made the allegedly false representations to plaintiff and sustained the demurrer to the fraud claim. *Id.* at 158. Like, the plaintiff in *Tarmann*, Plaintiff's FAC does not allege facts sufficient to satisfy the requisite specificity for a claim of fraud under California and federal law. Plaintiff simply states that Defendants and First American "concealed" the fact that the Loan was securitized and that they "knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the loans." (Doc. No. 20 ¶¶ 76, 77.) These factual conclusions do not specify which of the four Defendants allegedly concealed information from Plaintiff nor what the alleged false representations were. Accordingly, Plaintiff has failed to satisfy the pleading standards under Rule 9(b).

---

[5] The elements of fraud are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Robinson Helicopter Co. v. Dana Corp.,* 34 Cal. 4th 979, 990 (2004).

10

Additionally, Plaintiff cannot prove the last prong of his fraud claim which is evidence of damages. Plaintiff contends that he was "damaged in an amount to be proven at trial." (Doc. No. 20 ¶ 84.) As this Court has already stated, Plaintiff's home has not yet been sold, and Plaintiff has not pled any other damages to support his fraud claim. On a final note, "The general rule for liability for nondisclosure is that even if material facts are known to one party and not the other, failure to disclose those facts is not actionable fraud unless there is some fiduciary or confidential relationship giving rise to a duty to disclose." *Pension Trust Fund v. Fed. Ins. Co.*, 307 F.3d 944, 954 (9th Cir. 2002) (internal citations omitted). Therefore, even if Plaintiff had pled facts that met the heightened standard of Rule 9(b), Plaintiff has not provided this Court with evidence that a fiduciary relationship exists between Defendants, First American and himself. As a result, without pleading facts to support the elements of a fraud in concealment claim, Plaintiff cannot proceed with his fraud claim against Defendants and First American.

For the same reasons, Plaintiff's fraud in inducement claim also fails. Plaintiff claims that Defendants and First American failed to disclose the material terms of the transaction, which induced him to enter into the loan agreement. (Doc. No. 20 ¶ 88.) He further claims that Defendants and First American misrepresented that they were entitled to exercise the sale of provision in the Deed of Trust, resulting in the "fraudulent foreclosure" on the Property. (*Id.* ¶ 87.) However, Plaintiff's pleadings do not go in to the specifics of the who, what, when, where and how to satisfy the requisite specificity under California and Federal law.

Furthermore, in regards to both fraud claims, Plaintiff does not specify which of the four Defendants, or which persons within Defendants' corporations he is referring to. In addition, Plaintiff's allegations do not set forth what statements were said by Defendants and First American and when they were said. Without more, Plaintiff does not meet the heightened pleading standard as set forth by Rule 9(b) of the Federal Rules of Civil Procedure. Thus, as a matter of law, Plaintiff's fraud claims are **DISMISSED.**

///

## F.   THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

Plaintiff alleges that Defendants and First American violated the Rosenthal Act by "engaging in unfair and deceptive means" in order to collect his debt. (Doc. No. 20 ¶ 102.) In opposition, Defendants and First American argue that Plaintiff's claim fails for failure to plead facts implicating any wrongdoing under the Rosenthal Act and that foreclosure is not "debt collection" covered by the Act. (Doc. No. 23-1 at 8-9; Doc. No. 21-1 at 14.)

Numerous California district courts have concluded that the activity of foreclosing on a property pursuant to a deed of trust does not constitute "debt collection" under the Rosenthal Act. However, the Court notes that other circuits have held that foreclosure constitutes "debt collection" under the Rosenthal Act and the Ninth Circuit does not appear to have issued an opinion on the issue. *See Horton v. Cal. Credit Corp. Ret. Plan*, 835 F. Supp. 2d 879, 890 (S.D. Cal. 2011); *See, e.g., Kaltenback v. Richards*, 464 F.3d 524, 528 –29 (5th Cir. 2006). Thus, Plaintiff may have a cognizable claim under the Rosenthal Act regarding the non-judicial foreclosure against the Property.

Nonetheless, even if the Court made a determination that Defendants and First American's alleged activities did constitute "debt collection," Plaintiff's claim would still fail. *See Reyes v. Wells Fargo Bank*, No. C-10-01667 JCS, 2011 WL 30759, at *20 (N.D. Cal. Jan. 3, 2011) (finding that the foreclosure was actionable under the Rosenthal Act as the allegations were not based on the mere act of foreclosure but rather on allegedly deceptive statements contained in the offer letter which were "beyond the scope of the ordinary foreclosure process"). First, the Court notes that Plaintiff has failed to demonstrate that Defendants or First American were debt collectors as defined under the Act. Second, Plaintiff's FAC simply recites various provisions of the Rosenthal Act and alleges that Defendants violated each provision. (*See id.* ¶¶ 92-104.) Third, Plaintiff does not specify which of the four Defendants allegedly violated which provisions of the Rosenthal Act. Additionally, Plaintiff refers to the purported robo-signing of documents and invalid assignments without providing the Court with the corresponding section of the Rosenthal Act that Defendants or First American allegedly violated. (*Id.* ¶¶ 99, 100, 101.) This mere

recitation of provisions of the Rosenthal Act without additional facts to support Plaintiff's bald allegations is not sufficient to withstand a motion to dismiss. Consequently, Plaintiff's claim under the Rosenthal Act is **DISMISSED.**

### G.     REAL ESTATE SETTLEMENT PROCEDURES ACT

Plaintiff alleges that Defendants and First American, specifically Wells Fargo, violated RESPA by "failing to timely inform him of any Appointments, Assignments, and transfers of the mortgage." (Doc. No. 20 ¶ 106.) Defendants and First American argue that Plaintiff's "conclusory and unsupported allegation is insufficient to state a viable cause of action" and that "there is no private right of action under [RESPA] for failure to disclose an appointment, assignment, or loan transfer." (Doc. No. 23-1 at 9-10; Doc. No. 21-1 at 14.) First American further argues that Plaintiff's RESPA claim fails because he has not alleged that First American is a loan servicer as required under section 2605(e) of RESPA. (Doc. No. 21-1 at 14-15.)

The Court agrees with Defendants and First American and finds that there is no private right of action under RESPA for failure to disclose an appointment or assignment. *See Bloom v. Martin*, 865 F. Supp. 1377, 1383 (N.D. Cal. 1994); *see also Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1133 (E.D. Cal. 2010) (finding that defendants correctly pointed out the absence of a private right of action for RESPA disclosure violations).   However, even if Plaintiff could plead a viable RESPA claim, Plaintiff's FAC does not indicate which section of RESPA Defendants and First American allegedly violated. (Doc. No. 20 ¶ 105-107.) As a result, Plaintiff fails to put Defendants and First American on notice of the causes of action against them. *See McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but . . .  without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."); *see also Adobe Sys. Inc. v. Blue Source Grp., Inc.*, No. 14-CV-02147-LHK, 2015 WL 5118509, at *10 (N.D. Cal. Aug. 31, 2015) ("As a general rule, when a pleading fails 'to allege what role each Defendant played in the alleged harm,' this 'makes it exceedingly difficult, if not impossible, for individual

Defendants to respond to [p]laintiffs' allegations.'") (citation omitted). Furthermore, Plaintiff fails to allege pecuniary loss. Plaintiff only states that he is "entitled to actual and statutory damages, punitive damages, attorney's fees and costs." Absent allegations of identifiable damages, Plaintiff's RESPA claim must fail. *See Saldate*, 771 F. Supp. 2d at 1134 ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum also allege that the breach resulted in actual damages."); *see also Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut., Inc.*, No. C 10-02842 WHA, 2010 WL 3769459, at *4 (N.D. Cal. Sept. 22, 2010) (finding that plaintiffs RESPA claim was sufficient as plaintiffs specifically alleged that they had to pay late fees and other monetary penalties due to defendants' RESPA violations). For this reason, and the reasons stated above, Plaintiff's RESPA claim is **DISMISSED**.

## H.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff alleges that Defendants and First American's intentional misrepresentation of authority in enforcing the Deed of Trust and attempted foreclosure on the Property was outrageous and extreme. (Doc. No. 20 ¶¶ 111-112.) As a result, Plaintiff contends that he suffers from severe emotional distress, lack of sleep, severe depression, lack of appetite, and loss of workplace productivity. (*Id.* ¶¶ 115-117.) In response, Defendants and First American argue that Plaintiff has not alleged facts demonstrating conduct sufficient to state an IIED claim. (Doc. No. 23-1 at 10; Doc. No. 21-1 at 16.) First American further argues that its conduct as the substituted trustee on the Deed of Trust is authorized by California law and is privileged. (Doc. No. 21-1 at 16.)

The elements of the tort of IIED are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the [plaintiff] suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991).

The Court is sympathetic to Plaintiff and does not doubt that the commencement of foreclosure proceedings against his home has caused him and his wife untold distress. The

Court notes that a finding of wrongful disclosure accompanied by egregious conduct can form the basis of an IIED claim. *See McGinnis v. Am. Home Mort. Servicing, Inc.*, 817 F.3d 1241, 1258 (11th Cir. 2016) (finding that defendant's wrongful foreclosure in addition to other egregious conduct like frequent harassing phone calls and mail; awareness of error; pursuance of foreclosure in a short amount of time for a small amount of money "rendered its . . . unresponsiveness and belligerence . . . extreme and outrageous as a matter of law.") However, Plaintiff's claim falls short on showing this Court how Defendants and First American's acts in commencing allegedly illegal foreclosure proceedings rise to the requisite level of "outrageous conduct" for an IIED claim.

Here, Plaintiff only claims in his FAC that Defendants and First American's conduct was "outrageous" and "reckless." (Doc. No. 20 ¶ 110.) The Court finds that Plaintiff's claim of IIED is insufficiently pled. First, it is unclear as to whether Defendants or First American engaged in any wrongful conduct that was outrageous in the sense that it was so extreme as to exceed "all bounds" of what is "usually tolerated by decent society," and is "especially calculated to cause, and does cause, mental distress of a very serious kind." *Christensen*, 54 Cal. 3d at 904-905 (citations omitted). Second, Plaintiff has not alleged facts that would prove that Defendants or First American intended to cause Plaintiff emotional distress. Plaintiff avers that Defendants and First American had the intent to debilitate and distress Plaintiff so that he would be unable to exercise his legal rights to the Property. (Doc. No. 20 ¶ 113.) However, this statement is conclusory and is therefore inadequate to prove that Defendants and First American had the specific intent to single Plaintiff out for the purpose of causing him great emotional distress. Furthermore, even if Plaintiff provided the Court with sufficient facts to plead a claim of IIED, Defendants and First American's performance of the required foreclosure procedures and delivery of notices are privileged communications under California law. *See* Cal. Civ. Code § 2924(d). Without more from Plaintiff, the Court finds that the act of posting notices of default and declarations against a property in default does not rise to the reckless conduct that exceeds the bounds of what is tolerated by society. *Quinteros v. Aurora Loan Servs.*, 740 F. Supp.

2d, 1163, 1172 (E.D. Cal. 2010) ("[T]he act of foreclosing on a home (absent other circumstances) is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim."). Accordingly, Plaintiff's IIED claim is **DISMISSED.**

## I.      SLANDER OF TITLE

Defendants and First American argue that Plaintiff's slander of title claim should be dismissed for failure to allege facts suggesting impropriety with the non-judicial foreclosure. (Doc. No. 23-1 at 11; Doc. No. 21-1 at 16.) Defendants further argue that the act of recording title documents is privileged under California law. (Doc. No. 23-1 at 12.) Plaintiff alleges that Defendants and First American disparaged and slandered his title to the Property by publishing and recording the foreclosure documents when Defendants and First American knew or should have known that such documents were improper. (Doc. No. 20 ¶¶ 120-121.)

Slander of title occurs when a person, without privilege, publishes a false statement that disparages title to property and causes the owner pecuniary loss. *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC,* 205 Cal. App. 4th 999, 1030 (2012). The elements are: (1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss. *Id.* (citations omitted). Protection from injury to salability of property is an essential element and "is ordinarily indicated by the loss of a particular sale, impaired marketability, or depreciation in value." *Id.*

First, Plaintiff's claim fails because Defendants and First American's publications of the Notice of Default, the Notice of Trustee Sale, and the Trustee Deed are considered privileged communications under sections 2924 and 47 of the Civil Code. Cal. Civ. Code. Under section 2924(a)(1), "the trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file . . . a notice of default." *Id.* § 2924(1)(A). The notice of default must include "a statement identifying the deed of trust by stating the name or names of the trustor." *Id.* After three months, the mortgagee or trustee may record a notice of sale. *Id.* § 2924(1)(4). Section 2924(d) states that "the mailing, publication, and delivery of notices" required under section 2924 and "the performance of any procedures set forth in this article

16

constitute privileged communications pursuant to section 47 of the Civil Code." *Id.* § 2924(d).

An exemption to the section 47 privilege arises upon an allegation of malice. *Jacob B. v. Cty. of Shasta,* 40 Cal. 4th 948, 960 (2007) (citations omitted). As such, because the notices are required and privileged under section 2924 of the Civil Code, Plaintiff's claim only stands if he can allege sufficient facts indicating malicious intent on behalf of Defendants and First American in publishing the documents. Malice requires "that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon v. Karkowitz*, 168 Cal. App. 4th 316, 366 (Cal. Ct. App. 2008). Here, Plaintiff alleges that Defendants and First American knew or should have known that the documents were improper as at that time Defendants had no right, title or interest in the Property. (Doc. No. 20 ¶ 121.) These allegations, if true, are enough to overcome the malice standard. *See Ogilvie v. Select Portfolio Servs.*, No. 12-CV-001654-DMR, 2012 WL 4891583, at *5 (N.D. Cal. Oct. 12, 2012) (the court held that plaintiff's allegations that defendants acted with malice when they formulated false documents with knowledge of their falsity satisfied the malice exception).

Where Plaintiff's slander of title claim fails is that Plaintiff has not pled facts to prove direct pecuniary loss. Plaintiff states that "Plaintiff's title to the Property has been disparaged and slandered and there is a cloud on Plaintiff's title" and that he has suffered damages "in an amount to be proved at trial." (Doc. No. 20 ¶¶ 122-123.) These assertions are wholly conclusory and do not allege any facts to show how the allegedly slanderous recorded documents diminished the value of the Property itself. Moreover, Plaintiff's property has not yet been sold. As a result, Plaintiff's claim for slander of title is **DISMISSED.**

///

///

## J.    UNLAWFUL, UNFAIR AND FRAUDLUENT BUSINESS PRACTICES

Defendants and First American argue that Plaintiff's claim must fail because the FAC does not allege an underlying violation of law upon which an unfair competition ("UCL") claim must lie and does not claim any unfair or fraudulent activity. (Doc. No. 23-1 at 13-14; Doc. No. 21-1 at 17.) First American further argues that Plaintiff lacks standing as the Property has not been sold and that Plaintiff's FAC does not contain specific facts alleging any wrongdoing. (Doc. No. 21-1 at 16-17.) In opposition, Plaintiff contends that Defendants and First American have engaged in, and continue to engage in deceptive business practices in violation of section 17200 of the California Business and Professions Code. (Doc. No. 20 ¶¶ 125-126.)

To bring a UCL claim, a plaintiff must have private standing. Standing is limited to any person who has "suffered injury in fact, and has lost money or property" as a result of the UCL violation. *Kwikset Corp. v. Superior Court,* 51 Cal. 4th 310, 322 (2011) (citing Cal. Bus. & Prof. Code §17204, as amended by Prop. 64, as approved by voters, Gen. Elec. (Nov. 2, 2004) § 3). A plaintiff must then show either: (1) "an unlawful, unfair, or fraudulent business act or practice," or (2) "an unfair, deceptive, untrue or misleading advertising." *Lippitt v. Raymond James Fin. Servs., Inc.,* 340 F.3d 1033, 1043 (9th Cir. 2003) (citing Cal. Bus. & Prof. Code § 17200). "Unfair" means "any practice whose harm to the victim outweighs the benefits," and "fraudulent" requires a "showing that members of the public are likely to be deceived." *Id.* (citations omitted). Under the fraudulent prong the complaint must allege "sufficiently detailed allegations of deception and fraud" to sustain the elements of a UCL claim. *Id.*

As an initial matter, Plaintiff has failed to establish private standing. In the FAC, Plaintiff lists eleven alleged deceptive business practices Defendants and First American have engaged in with respect to mortgage loan servicing, assignment of notes and deeds of trust, and premature foreclosures. (Doc. No. 20 ¶ 126.) However, Plaintiff does not claim that he has personally lost money or property due to Defendants and First American's

alleged UCL violation. As the Court has noted, the Property has not yet been sold in foreclosure proceedings. Therefore, Plaintiff's UCL cause of action fails on its face.

Even if Plaintiff could establish private standing, the Court notes that Plaintiff has not pled facts detailing the alleged deception and fraud. A UCL claim grounded in fraud is subject to FRCP 9(b)'s heightened pleading standard. Like Plaintiff's claims in sections section E above, Plaintiff has failed to provide the Court with the who, what, when, where and how of its UCL claim. Thus, Plaintiff has failed to satisfy the requisite specificity for fraud under California and federal law. As a result, Plaintiff's UCL claim is **DISMISSED.**

### K.    HOMEOWNERS BILL OF RIGHTS

Plaintiff alleges that Defendants and First American violated section 2923.55 of the California Civil Code, enacted with the HBOR. (Doc. No. 20 ¶ 132.) In opposition, Defendants and First American argue that Plaintiff has failed to allege facts sufficient to substantiate his HBOR claim. (Doc. No. 23-1 at 14; Doc. No. 21-1 at 17.)

Section 2923.55 of the California Civil Code outlines procedural requirements for pre-foreclosure contact and notice. Cal. Civ. Code. "Section 2923.55 requires a mortgage servicer to contact the borrower to assess the borrower's financial situation and to explore options of avoiding foreclosure." *Major v. Wells Fargo Bank, N.A.,* No. 14-CV-998-LAB-RBB, 2014 WL 4103936, at *3 (S.D. Cal. Aug. 18, 2014) (citing Cal. Civ. Code § 2923.55(b)(2)). "A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of 'borrower' pursuant to subdivision (c) of Section 2920.5." Cal. Civ. Code § 2923.55(c).

Plaintiff's complaint consists of a formulaic recitation of the statutory requirements under section 2923.55. (Doc. No. 20 ¶¶ 133-135.) Plaintiff claims that Defendants and First American failed to comply with section 2923.55 by failing to send written notice before recording the Notice of Default, by failing to send notice that Plaintiff could request

documents associated with the Loan and foreclosure, and by failing to contact Plaintiff in order to assess his financial situation and explore options to avoid foreclosure. (*Id.*)

In order to survive a motion to dismiss, Plaintiff must allege additional facts to substantiate his claim, such as: "(1) whether [plaintiff] was purposefully avoiding corresponding with [defendants]; (2) whether [defendants] exercised due diligence in trying to reach [plaintiff]; or (3) whether [plaintiff] received any telephone calls or messages from [defendants]." *Major*, 2014 WL 4103936, at *3. Furthermore, the only relief available to Plaintiff under section 2923.55 is postponement of the foreclosure sale until there has been compliance with the statute. *See Mabry*, 185 Cal. App. 4th at 221, 235. The Property has not been sold at foreclosure, thus Plaintiff now has notice of his rights under section 2923.55 and is free to request documents and information from Defendants or First American. Accordingly, as Plaintiff has failed to plead any facts to show how Defendants or First American violated section 2923.55, his claim is **DISMISSED.**

### L.    QUIET TITLE

Plaintiff asks the Court to quiet title to the Property in his name alone. (Doc. No. 20 ¶ 141.) In opposition, Defendants and First American allege that Plaintiff's quiet title claim is unsupported by facts and should fail as a matter of law. (Doc. No. 23-1 at 16; Doc. No. 21-1 at 18.)

Under California law, to state a claim for quiet title, the plaintiff must allege five elements: "(1) a legal description and street address of the property; (2) the plaintiff's title to which determination is sought and the basis of that title; (3) the adverse claims to the title against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of plaintiff against the adverse claims." *Ruiz v. Wells Fargo Bank, N.A.,* No. CV 13-1114 PA JCX, 2013 WL 1235841, at *2 (C.D. Cal. Mar. 27, 2013) (citing Cal. Code Civ. P. § 761.020). A plaintiff must further allege the tender of, or an offer to tender, the remaining amount owed on the loan. *Id.*

Plaintiff's FAC gives a description of the Property and alleges that he is the owner of the Property in fee simple based on the grant deed dated October 14, 2003. (Doc. No.

20 ¶¶ 138, 139.) He further alleges that Defendants and First American are claiming an adverse interest in the Property but do not have a right, title, or interest in the Property and is asking the Court to quiet title in his name. (*Id.* ¶ 141.) However, where Plaintiff's claim fails is that he does not contend that he has the ability to tender the remaining amounts owed on the Loan. Without doing so, Plaintiff would evade paying his lawful debt. For the reasons stated above, Plaintiff's quiet title claim is **DISMISSED.**

## M.   DECLARATORY RELIEF

Plaintiff requests various forms of declaratory relief, including a judicial determination of the ownership rights to the Property in his favor. (Doc. No. 20 ¶¶ 146 - 152.) In response, Defendants and First American argue that Plaintiff's claim for declaratory relief fails because declaratory relief is not an independent cause of action and his claim is "wholly derivative of other non-viable causes of action." (Doc. No. 23-1 at 17; Doc. No. 21-1 at 19.)

California Civil Procedure Code section 1060 permits "any person interested under a written instrument . . . who desires a declaration of his or her rights or duties . . . in respect to property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties."

However, where a court has concluded that a plaintiff did not state sufficient facts to support a cause of action and therefore dismissed the claim, a dismissal is also proper as to a claim for declaratory relief which is "wholly derivative" of the statutory claim. *See Ball v. FleetBoston Fin. Corp.,* 164 Cal. App. 4th 794, 800 (2008). Here, as Plaintiff's claim is wholly derivative of the previous causes of action which were all dismissed for failure to state sufficient facts to plead a viable claim, Plaintiff's claim for declaratory relief is also **DISMISSED.**

## IV.   LEAVE TO AMEND

Federal Rule of Civil Procedure 15 advises the court to grant leave to amend freely "when justice so requires." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

This policy is to be applied liberally. *Owens v. Kaiser Found Health Plan, Inc*., 244 F.3d 708,712 (9th Cir. 2001). Furthermore, "the rule favoring liberality in amendments to pleadings is particularly important for pro se litigants." *Id.* (citation omitted). Given that Plaintiff is a pro se litigant and has only been granted one prior leave to amend, the Court finds that justice requires he be given a second chance to cure deficiencies in the instant pleading.

## V.    CONCLUSION

For the reasons set forth in detail above, the Court orders as follows:

(1)    Defendants Wells Fargo and US Bank's motion to dismiss (Doc. No. 23) is **GRANTED WITH LEAVE TO AMEND**

(2)    First American's motion to dismiss (Doc. No. 21) is **GRANTED WITH LEAVE TO AMEND**

(2)    Plaintiff's claims under the Truth in Lending Act, Fair Housing Act, and Equal Credit Opportunity Act are **DISMISSED WITH PREJUDICE**

If Plaintiff can plausibly allege additional facts, not merely a recitation of statutory provisions, to cure the deficiencies of the causes of action that have been granted leave to amend, he may file an amended complaint within fourteen (14) days of the date of this order. Failure to do so will result in the dismissal of this case with prejudice.

**IT IS SO ORDERED.**

Dated:  November 23, 2016

Hon. Anthony J. Battaglia
United States District Judge

16cv0811 AJB (DHB)